UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOSEPH LOUKAS, #188443,

        Petitioner,

                                 CASE NO. 2:18-CV-12987
v.                                   HON. NANCY G. EDMUNDS

TONY TRIERWEILER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, BUT GRANTING IN PART A CERTIFICATE OF APPEALABILITY**

**I.     Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner

Michael Joseph Loukas ("Petitioner") was convicted of first-degree home invasion, MICH.

COMP. LAWS § 750.110a(2)(b), following a jury trial in the Macomb County Circuit Court in

2013. Upon re-sentencing, he was sentenced as a fourth habitual offender, MICH. COMP.

LAWS § 769.10, to 20 to 40 years imprisonment. In his pleadings, Petitioner raises claims

concerning the effectiveness of trial and appellate counsel, his right to present a defense,

the conduct of prosecutor, the sufficiency of the evidence, his right to confront witnesses,

and the validity of his sentence. For the reasons set forth herein, the Court denies the

habeas petition, but grants a certificate of appealability as to one claim.

**II.    Facts and Procedural History**

Petitioner's conviction arises from a home invasion that occurred in Macomb County,

Michigan on June 29, 2012. The Michigan Court of Appeals described the underlying facts,

which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Katieva Shipp testified that around 11:00 a.m. or 11:30 a.m. on June 29, 2012, she and her daughter were lying in bed when she heard the sound of "change" and "flip-flops" coming from the living room area of her home. Shipp testified that she got out of bed, picked up a vase that was on the side of her dresser, and "peeked around the corner." She testified that she saw a man standing by her bathroom door, they lying looked at each other, she screamed, and the man ran away. A neighbor called the police, and Shipp talked to the dispatcher. Shipp told the dispatcher that the suspect wore a turquoise tank top, shorts, flip-flops, and had long hair. Center Line Police Department Detective Curt Winn, who was dispatched to the scene, testified that he observed a man, defendant, wearing a turquoise tank top standing and then walking on the grass outside of Shipp's property. In court, Shipp identified defendant as the man she saw inside her house.

*People v. Loukas*, No. 318572, 2015 WL 4378733, *1 (Mich. Ct. App. July 16, 2015) (unpublished).

Following his conviction and re-sentencing, Petitioner filed a motion for new trial or an evidentiary hearing with the state trial court asserting that trial counsel was ineffective for failing to raise an involuntary intoxication defense. The trial court conducted a hearing and denied the motion.

Petitioner then filed an appeal of right with the Michigan Court of Appeals asserting that trial counsel was ineffective for failing to pursue an involuntary intoxication defense and jury instruction, as well as a motion to remand for a *Ginther* hearing. The Michigan Court of Appeals granted the motion to remand and remanded the case to the trial court for an evidentiary hearing.

On remand, the trial court conducted a hearing in which trial counsel and three other witnesses testified. The court subsequently denied the motion for new trial, finding that trial counsel was not ineffective for failing to raise a meritless defense. *People v. Loukas*, No.

2012-3522-FH (Macomb Co. Cir. Ct. Dec. 29, 2014).

Petitioner thereafter filed an appeal of right with the Michigan Court of Appeals asserting that trial counsel was ineffective for failing to pursue an involuntary intoxication defense and jury instruction and that the trial court denied him the right to present a defense. The court denied relief on those claims and affirmed his conviction. *People v. Loukas*, No. 318572, 2015 WL 4378733, *1-4 (Mich. Ct. App. July 16, 2015) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Loukas*, 499 Mich. 898, 876 N.W.2d 818 (2016).

Petitioner then filed a motion for relief from judgment with the state trial court raising claims concerning the conduct of the prosecutor, the sufficiency of the evidence, the jury instructions as to a lesser offense, and the validity of his sentence. The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3) and on the merits. *People v. Loukas*, No. 2012-3522-FH (Macomb Co. Cir. Ct. April 13, 2017). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to establish that the trial court erred in denying relief from judgment. *People v. Loukas*, No. 340051 (Mich. Ct. App. Feb. 20, 2018). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D). *People v. Loukas*, 503 Mich. 860, 917 N.W.2d 377 (2018).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.      He was denied the right to the effective assistance of trial counsel where counsel failed to present evidence to support a defense of involuntary intoxication and failed to request an involuntary intoxication jury instruction.

II.     He was denied his statutory and constitutional right to the defense of involuntary intoxication and the trial court's ruling denied him his constitutional right to present a complete defense.

III.    He was denied the right to the effective assistance fo appellate counsel where counsel failed to raise trial court errors and ineffective assistance of counsel on direct appeal.

IV.    The prosecutor engaged in misconduct by making unsupported statements of fact in opening and closing statements and there was insufficient evidence to support his convictions.

V.    The prior convictions used by the State to calculate his PRV range under the sentencing guidelines at the time of conviction should not have been available to assess his sentence.

VI.    He was denied of his constitutional right to confront witnesses where Ms. Shipp testified about her daughter's knowledge of events and he did not have to opportunity to cross-examine the daughter.

Respondent filed an answer to the habeas petition contending that it should be denied because several claims are barred by procedural default and all of the claims lack merit. Petitioner filed a reply to that answer.

## III.    <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable
       determination of the facts in light of the evidence presented in the
       State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to

apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

IV.     **Analysis**

        A       **Effectiveness of Trial Counsel (Habeas Claim I)**

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate and present an involuntary intoxication defense and request a related jury instruction due to his alleged first time use of a prescribed medication, Thorazine.  Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id*. at 689.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

8

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Strickland* standard, and denied relief. The court explained in relevant part:

> Defendant's trial counsel admitted at the *Ginther* hearing that she "had no strategic reason not to raise the defense." Counsel admitted that she never actually researched the involuntary intoxication defense, instead relying on her recollection of its parameters. She indicated that her understanding of the defense was that it applied where a person did not knowingly consume a substance. This is inaccurate. The defense actually requires voluntary consumption. *See* MCL 768.37.[2] Defendant testified that he took Thorazine

---

[2]The statute provides as follows:

on the day in question, and he produced his prescriptions. Thus, he presented evidence that he voluntarily consumed a legally obtained medication, as required by the intoxication defense.

An expert knowledgeable about the use and effects of Thorazine explained that aside from its intended effect, Thorazine has "quite a few other effects," including "anticholinergic effects" such as "a lot of sedation" and "an effect on the memory." The expert also testified that Thorazine has "an effect on orientation and the ability to think straight." She opined that there would be no reason for a patient to expect to experience a side effect in the absence of advice from a doctor. Defendant testified that he read of the side effects of Thorazine, but did not expect them to occur. He denied that his doctor talked with him about the side effects of Thorazine when he prescribed it. Accordingly, the trial court erred when it determined that defendant did not present evidence to establish the elements of the intoxication defense.

Nonetheless, defendant cannot establish the requisite prejudice. Defendant argues that there might have been a different outcome had the jury heard that he took Thorazine for the first time and heard about its side effects. A different outcome would be possible if the jury found defendant to be credible and believed his testimony. However, as plaintiff argues, had defendant taken the stand and testified about his alleged intoxication, he would have opened the door to evidence about his prior convictions for breaking and entering under MRE 404(b). Such evidence would be highly inculpatory.

*Loukas*, 2015 WL 4378733 at *1-2 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable of federal law or the facts.  It is well-settled that defense counsel must

---

(1) Except as provided in subsection (2), it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor, drug, including a controlled substance, other substance or compound, or combination of alcoholic liquor, drug, or other substance or compound.

(2) It is an affirmative defense to a specific intent crime, for which the defendant has the burden of proof by a preponderance of the evidence, that he or she voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired.

conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning ... guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, the record of the evidentiary hearing indicates that trial counsel was aware of the involuntary intoxication defense, but had not researched it and had a misunderstanding about an element of the defense, that she was aware of Petitioner's medications and reviewed his treatment records, that she attempted to obtain a plea offer from the prosecution on the basis of the medications, that she made efforts to secure testimony from Petitioner's treating physicians, but was unable to do so, that she did not have money to hire an expert witness, that she discussed the pros and cons of Petitioner testifying in his own defense at trial and he chose not to do so, and that she presented a defense attacking the prosecution witnesses' credibility and version of events and attempting to show that Petitioner was not the perpetrator and/or that he had no intent to

steal.  *See* ECF No. 6-10, PageID.39-45, 63-64, 74-76, 79.  The question is whether such efforts were reasonable.  Given that counsel was aware of the medication issue and its importance to the case, her failure to fully research the involuntary intoxication defense may constitute deficient performance.

Even assuming that such is the case, however, Petitioner must still establish that he was prejudiced by counsel's conduct.  He fails to do so.  Petitioner's chance of prevailing on an involuntary intoxication defense was low given that he would have had to testify at trial to explain that he voluntarily took Thorazine (and other medications) and that he was unaware of potential side effects.  Such testimony would have subject him to cross-examination about his prior breaking and entering convictions under Michigan Court Rule 404(b) (similar acts evidence) and/or under Michigan Court Rule 609 (impeachment with prior convictions involving theft or dishonesty), which would have been inculpatory and detrimental to his defense.  Such testimony would have also been subject to impeachment because Petitioner admitted that he had read about Thorazine's side effects, *see* ECF No. 6-10, PageID.573-574,  589-590, and claimed that he first took Thorazine on the day of the incident even though it had been prescribed two months earlier.  *See* ECF No. 6-10, Page.ID.587.  Additionally, while the parties did not delve into such matters at trial, there is some question as to whether Petitioner could have shown that he was actually impaired at the time of the incident.  Detective Winn testified that when he confronted Petitioner in the area near the victim's residence, Petitioner said that he did nothing wrong and was on his way to Auto Zone.  ECF No. 6-6, PageID.450.  Petitioner fails to show that there is a reasonable probability that the result of the proceeding would have been different had counsel presented an involuntary intoxication defense at trial.  He

thus fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

**B.     Right to Present a Defense (Habeas Claim II)**

Petitioner next asserts that he is entitled to habeas relief because the trial court denied him the right to present a defense by making an off-the-record ruling that counsel could not present an involuntary intoxication defense.   Respondent contends that this claim lacks merit.

The right of an accused to present a defense has long been recognized as "fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). A defendant's right to present a defense is not unlimited, however, and may be subject to "reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  For example, a defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury").  In such cases, the question is not whether the jury would reach a different result, but whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *Chambers*, 410 U.S. at 302.

The Michigan Court of Appeals considered this claim on direct appeal and denied

relief.  The court explained in relevant part:

There was contradictory testimony at the *Ginther* hearing regarding whether the trial court made an off-the-record ruling forbidding defense counsel from presenting the intoxication defense. The prosecutor cited a motion he made to support his assertion that the court forbade defense counsel from raising the intoxication defense:

Your Honor, while we're killing time, I was going to make a motion in limine just to double check, because of the way the case was transpired up until today, and then the statements at right before we broke for lunch, it was my understanding that counsel always had a, was going to proceed with the defense, the affirmative defense of intoxication. Given the way we wrapped up this morning, and the people calling two witnesses, and the defense not calling witnesses, I'd ask that if in some way counsel wants to get into that defense through the officer in charge, as he testifies, that would be improper questions on his part. So if she's consistent with the way she wanted to defend this case leading up until today, at least the representations to the people, I don't know how she's going to do that with the two witnesses that we're calling and calling no witnesses.

The prosecutor asked defense counsel if she remembered him making the motion at trial, and counsel indicated that she did remember it. The prosecutor also asked defense counsel if he had provided an accurate summary of what happened at trial, and defense counsel replied that it was correct.

Immediately after the prosecutor made his motion in limine, the following exchange occurred:

Defense counsel: I don't know what he's talking about, Your Honor.

The court: I don't think there'd be expert opinion, but she could certainly question as to his state of mind.

Prosecutor: Exactly.

The court: Okay.

Defense counsel: And I've already, I don't know what he's talking about. He, we talked about it yesterday, he brought it up this morning, I said it's not an issue. If it was, I'd raise it with the prosecutor and the court.

The court: I guess we'll go with it's not an issue.

Defense counsel: And I already told him that. So, I mean, I think he should probably get past it. It's not happening.

The court: Okay. It was brought up yesterday in chambers.

Defense counsel: Exactly, and I, he brought it up before we went to lunch, and I told him—

The court: Okay. Well, now—

Defense counsel: Well, I, I think if we could check the record, I think I told him that it was not going to be part of my case.

The court: Okay. We're clear then.

Prosecutor: Very good. Thank you, Judge.

Defense counsel: Crystal.

The prosecutor's motion and the subsequent discussion do not directly evidence any ruling by the court regarding the involuntary intoxication defense. At best, the discussion shows that the parties discussed the intoxication defense in judicial chambers, and the court might have made a ruling at that time. However, if the court made a ruling forbidding defense counsel from raising the intoxication defense as the prosecutor claimed, then it is unclear why the prosecutor thought that counsel "was going to proceed with the ... affirmative defense of intoxication." Additionally, defense counsel later testified that her understanding of the judge's off-the-record ruling was that evidence of defendant's medication would not be allowed because she failed to lay a foundation for it. Thus, there is no evidence that the trial court denied defendant the right to present his defense.

*Loukas*, 2015 WL 4378722 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As Petitioner concedes and Respondent acknowledges, the record is murky regarding whether the trial court issued an off-the-record ruling that precluded the defense from raising an involuntary intoxication defense or merely ruled that there was no foundation laid to present evidence of Petitioner's use of prescribed medications. *See* ECF No. 1, PageID.62; ECF No. 5,

PageID.124.  The Michigan Court of Appeals found that the latter occurred.  That factual finding is presumed correct on habeas review, 28 U.S.C. § 2254(e)(1), and Petitioner fails to rebut it with clear and convincing evidence.  *Warren*, 161 F.3d at 360-61.

A trial court's preclusion of evidence for failure to lay a proper foundation does not violate a defendant's constitutional right to present a defense.  *See, e.g., Case v. Rapelje*, No. 2:12-CV-10845, 2014 WL 6750280, *6 (E.D. Mich. Dec. 1, 2014) (trial court's exclusion of evidence for failure to offer proof of victim's prior sexual abuse allegations did not deprive petitioner of right to present a defense); *Dell v. Straub*, 194 F. Supp. 2d 629, 644 (E.D. Mich. 2002) (requiring a defendant lay a foundation for the admission of evidence does not violate the Confrontation Clause); *see also Nevada v. Jackson*, 569 U.S. 505, 509 (2013) ("Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."); *Scheffer*, 523 U.S. at 308 (state rules excluding evidence "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are intended to serve'").  Petitioner could have laid a proper foundation for such evidence, e.g., by testifying at trial, but he did not do so.  He was also able to present a meaningful defense by challenging the testimony of the prosecution witnesses and arguing that the prosecution failed to establish the requisite intent to support a conviction.  Petitioner was not denied his right to present a defense.  Habeas relief is not warranted on this claim.

### C.    Procedural Default (Habeas Claims IV, V. VI

Respondent contends that Petitioner's remaining habeas claims are barred by procedural default.  Petitioner first raised the claims in the state courts on post-conviction

16

collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Petitioner first presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has held that the form orders used by the Michigan appellate courts to deny leave to appeal in this case is unexplained because the citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a

17

procedural default or a rejection on the merits.  *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan appellate courts to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds by ruling that Petitioner had not shown cause or actual prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his conviction.  The state courts thus clearly relied upon a procedural default to deny Petitioner relief on these claims. Accordingly, the claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  To establish cause, a petitioner must establish that some external impediment frustrated his or her ability to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner must present a substantial reason to excuse the default.  *Amadeo v. Zant*, 486 U.S. 214, 223 (1988).  Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available.  *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default.  In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance

prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).   In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690.   Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy ….  Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those

presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial issues on direct appeal including claims challenging the effectiveness of trial counsel and the right to present a defense. None of the defaulted claims are "dead-bang winners" given that the state trial court ruled that they lack merit (such that prejudice could not be established) – and given the significant evidence of guilt presented at trial.

Moreover, even if appellate counsel erred, Petitioner cannot show that he was prejudiced by appellate counsel's conduct (or demonstrate prejudice to excuse the procedural default) because the defaulted claims lack merit for the reasons stated by the trial court in denying relief from judgment, *see* ECF No. 6-14, and as further discussed by Respondent in the answer to the petition. *See* ECF No. 5, PageID.135-169. Petitioner fails to establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct as required by *Strickland*, 466 U.S. at 687. He thus fails to establish cause and prejudice to excuse his procedural default.

Petitioner also fails to demonstrate that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v.*

*Carrier*, 477 U.S. 478, 479-80 (1986).  To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Moreover, actual innocence means factual innocence, not mere legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Petitioner makes no such showing.  These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

      **D.**      **Effectiveness of Appellate Counsel (Habeas Claim III)**

Petitioner also raises an independent claim that appellate counsel was ineffective for failing to raise the other collateral review issues on direct appeal.  Respondent contends that this claim is procedurally defaulted and/or that it lacks merit.

The ineffective assistance of appellate counsel claim, while perhaps not itself procedurally defaulted, nonetheless lacks merit.  As discussed *supra*, Petitioner fails to establish that appellate counsel was ineffective under the *Strickland* standard and the defaulted claims lack merit.  Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit.  *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Habeas relief is not warranted on this claim.

**V.**      **Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must

issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fᴇᴅ. R. Aᴘᴘ. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner makes a substantial showing of the denial of a constitutional right as to his first habeas claim involving the effectiveness of trial counsel, but does not do so as to his remaining habeas claims.  The Court also concludes that reasonable jurists could not debate the correctness of the Court's procedural ruling. Accordingly, the Court **GRANTS** a certificate of appealability as to Petitioner's first habeas claim, but **DENIES** a certificate of appealability as to the other habeas claims.  This case is closed.

**IT IS SO ORDERED**.

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated:  May 4, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 4, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager